Verdict *pro quer.* for two third parts of the premises.

Messrs. M. and S. Levy and Brinton, *pro quer.*

Messrs. E. Tilghman and M'Kean, *pro def.*

Cited in 2 Watts 150.

# Ferdinand Gourdon (for the use of his assignees) *against* the President and Directors of the Insurance Company of North America.

## Same *v.* Same.

A policy of insurance is assignable in equity, and every set off between the in-
surer and insured obtains against the assignee, unless as in the case of bonds, there
has been deception on the assignee, on receiving information of the assignment.

THESE were two actions of covenant, brought on two policies
of insurance dated 18th April 1797, the one on the cargo of the
schooner Felicity, Hulings Cowperthwaite master at and from
Philadelphia to Leogane, and at and from thence back again,
valued at $20,000, and the other on the said schooner, valued at
$5,000.

The defendants pleaded *non infregit conventiones*, with notice
of set off.

The policies contained a warranty, that the schooner and
cargo were American property; and they were insured against
*328] *all risks, at a premium of 12½ per cent. The form of the
policies extended to the assured, his executors, adminis-
trators and assigns; it was stipulated therein, that in case of
loss, there should be a deduction of 2 per cent., and the premium.

On the 19th April 1797, Gourdon by separate instruments as-

signed the two policies, the schooner, and the invoices of the outward bound cargo and bills of lading to Pratt and Kintzing, to secure the payment of a just debt.   On the 15th May 1797, Gourdon assigned all his surplus property to John James and others, a committee appointed by his creditors for the use of them all rateably, provided three fourths of his creditors shall agree thereto and shall subscribe a release, the share of any one creditor refusing so to do, to be paid to Gourdon ; and on the next day, the creditors in general empowered the committee to execute releases.

On the 23d May 1797, the schooner was captured in her homeward voyage from Leogane and carried into Port au Prince on the 27th.   The cargo was there condemned in the Admiralty, but the schooner cleared on a survey, the vessel being found incapable of making the voyage, was sold, and after deducting all expences, there remained a balance in favour of the owners of 34 dollars only.

On the 7th July 1798, Pratt and Kintzing having received their demand due from Gourdon, assigned over the two policies to the committee of his creditors.

The defendants claimed a defalcation of seven protested notes given by Gourdon, previous to the assignment to Pratt and Kintzing, indorsed to the company amounting to $15,125, but payable after the subscription of the policies, on different days ; a further sum of $1,475$\frac{50}{100}$ on two charges of premiums made on the 22d April and 11th July 1797, with a credit of 3 months ; and of $2,800 paid to Pratt and Kintzing on the 27th March 1798, on the two policies, and of $9,300 paid to the United States for duties due from Gourdon on the 3d December following.

The defendants admitted the insurance, loss and abandonment, but disagreed from the plaintiff's statement as to the times of their receiving notice of Pratt and Kintzing's assignment, and of the abandonment.   They wholly denied receiving any information of the assignment of 15th May 1797.   Pratt deposed to the copy of a letter, extracted from his letter book, dated 4th May 1797, wherein he notified the company of Gourdon's assignment of the policies, &c. to the firm, and to his belief that the original was given to one of his clerks next day to be delivered.   But this was encountered by the testimony of [*329 *the secretary of the company, who said, no such letter had been received, nor could the same be found on the most careful search of the papers in their office ; and besides, Gourdon on the 11th December following, applied for payment of the loss in his own name.   About the 10th May 1797, the creditors of Gourdon had a meeting, and Ebenezer Hazard attended as secretary of the insurance company.   Whether he gave notice to the creditors of any claims for the notes of Gourdon due to the defendants for premiums, which had not then become due, did not appear, but they appointed James and others a com-

mittee to act for them.   On the 7th November 1797, the company received notice of the loss, by the captain's protest being shewn to and endorsed by their secretary.   And on the 16th November 1797, a formal abandonment and cession was executed by Gourdon, and Pratt and Kintzing, but no evidence was given when it was shewn or offered to the defendants.   It was agreed on the trial, that the jury should ascertain how far the defendants were entitled to a defalcation, and that the balance should be liquidated by reference.

The counsel for the plaintiff contended, that there could be no set off beyond the 2 per cent. and the premiums of the particular policies, as well from the terms of the instruments, as from the law incorporating the company ; and that under all the circumstances of the case, any further or other defalcation would be inequitable.   The form of the policies extends to the insured and his assigns.   Under their express words, the insurers may deduct in case of loss 2 per cent., and the premiums.   This is tantamount to words in promissory notes "without defalcation." It expresses certain defalcations, and excludes others.   The defendants cannot have a lien superior to other citizens ; and their usual method when they doubt of the sufficiency of notes given for premiums, has been to retain the policies in their own hands.   The act incorporating the subscribers to the insurance company of North America, passed 14th April 1794, contains a clause in the 5th section, (3 St. Laws 491) that the company shall ratify, pay and discharge all just demands on their policies for any losses which shall happen, according to the tenor and effect of such policies.   The words pay and discharge cannot be satisfied in their common law sense, by a set off.   The policies of the incorporated companies in England have no such words as exist in the present instance.  2 Magens. 383.

The idea generally entertained in the commercial world has been, that policies of assurance and bills of lading are assignable *in their nature.   While the property is at sea, it is susceptible of no other personal possession than by delivery of the proper muniments ; and by a transfer, the privity between the original owner and his creditors, as to the right of property, is extinct.

A policy may be transferred.   Though at law a chose in action may not be assigned, yet it may in equity.   Per ASHURST, J. 1 Term Rep. 26.   And BULLER, J. classes bills of exchange and policies of assurance together.   Both, says he, are assignable by the custom of merchants. 4 Term Rep. 242.   So also in France, a policy is negotiable as a bill payable to order.   The transfer passes the full right to the prejudice of all the creditors of the assignor. 2 Valin. Com. 45.   Policies of insurance are sacred things, and must be performed with all good faith.   They shall not be altered or explained by parol testimony. Skin. 54.

The silence of the insurance company, as to their claims against Gourdon, has lulled his creditors into a confidence, that

their interests were fully secured by the two policies. They have thus by their own conduct prevented them from making another insurance, which they might lawfully have done, when the property passed into new hands. A double insurance is distinct from a re-assurance, which in England, except in the cases provided for by the stat. of 19 Geo. 2, c. 37, is absolutely void, though on the former, one loss only can be recovered. Park. Insur. 1st edit. 320. 1 Burr. 422, 496.

The letter from Pratt and Kintzing, of the 4th May 1797, was wrote to the defendants with no other view than to inform them of the assignments, and it must be presumed from all the circumstances, that it was sent to them, though the original cannot now be found. The application of Gourdon in December following for payment, must be supposed to be as agent for his creditors. The creditors were convened on the 10th May for the purpose of receiving information respecting Gourdon's affairs, and consulting their common interests. Hazard, the secretary of the company, was there, and as their representative was bound to give notice of their demands. He knew of the appointment of the committee, and could not be ignorant that the meditated assignment, which was completed five days afterwards, would comprehend all the surplus property, after paying the demand of Pratt and Kintzing. Ought he not then to have unequivocally asserted the claims of the corporation, and not have suffered the creditors to remain in the dark? If a loss has been sustained by his negligence and laches, on whom, in point of equity, should it be thrown?

It is admitted, that the payment to the United States for duties, is binding on the plaintiff, because the property in his *hands or his assignees, is subject to their lien. So of the payment to Pratt and Kintzing, on the foot of the poli- [*331 cies. But beyond these items, and the premiums of the particular policies and the deduction of 2 per cent., the defendants insist on a defalcation of divers sums, between them and Gourdon, the first payable in June and the last in October 1797. The claim goes to the unwarrantable extent of including every charge, as well subsequent as prior to the policies in question, though none of them became due, until after both assignments were perfected. To justify a set-off, there must be a connection between the demands, and they must be in the same right. Ambl. 407. Nothing can be set off against an assignee, which was not due at the time of assignment. 1 Dall. 28. Assignee of a bond or note can recover no more than the original obligee or payee could have done, prior to the transfer. Ib. 443. To set off a debt against an assignee, it must be a mutual debt or demand, at the time of assignment. 3 Dall. 505. Nothing can be set off which is not due at the commencement of the suit. A plea of set off, that the plaintiff was indebted to the defendant at the time of plea pleaded. 3 Term Rep. 186.

For the defendants, it was insisted, that it has never yet been

held, that where the obligee of a bond has given promissory notes to the obligor, and afterwards assigns such bond, the notes though not due and payable at the time of the assignment, may not be defaulked against the bond, provided the same have come to maturity previous to the institution of the suit on the bond. Here all the notes precede even the first assignment, though two of the charges are subsequent thereto, viz. on 22d April and 11th July 1797. The policies, when assigned, were foundations of demands depending on the contingency of a loss. But opposed thereto are actual negotiable notes of the plaintiff's indorsed to the company, and just charges for money due to them, all of which had become due before any notice was received of the loss, and after this period, it is stipulated by the policies, that the defendants have thirty days allowed to them to pay the losses. The assignment to Pratt and Kintzing is *functus officio*, except as to 73l. 15s. 4d. paid to them lately by the committee of the creditors, as the balance of their demand. It does not appear that the defendants received any notice of the second assignment of the 15th May, nor when they were informed of the abandonment of the 16th November 1797.

As between the original parties, there could be no possible difficulty. The notes and charges became due and payable before the present suits were brought. It is a settled rule, that an *332] *assignee is subject to all the equity which existed between the first parties to the transaction. Doug. 614. And so it has been adjudged amongst us, as to bonds and notes, 1 Dall. 23. In a court of common law, the assignee of a chose in action is not considered. 7 Term Rep. 663. The committee of creditors could not support an action in their own names, not being interested originally in the policy. They therefore claim under a mere equitable assignment; and unless they can show that they have a superior equity to the defendants, the law must prevail. Whatever opinions some merchants may have formed, a policy of insurance was not an instrument of such negotiable nature, as notes previous to the act of 27th February 1797, 4 St. Laws 102, and set offs continued upon the assignment of the latter. And it will be remembered, that our defalcation act has much more comprehensive words than the British statutes. The form of the policies has been relied on, but nothing can be justly inferred therefrom. The company would have been entitled to defaulk the premium on the particular policy, if those words had not been inserted; and the rule of *expressio unius est exclusio alterius* cannot hold in the present instance. Suppose the defendants had accommodated the plaintiff with the loan of a sum of money before he had made an assignment, or notice received of the loss, it cannot be denied but that this loan might be set off, in case of a loss, and yet no provision is made for that purpose by the words of the policy. The correct inference from the expressions would seem to be, that though the premium had not fallen due when the suit was instituted, it might be deducted

.[Gourdon *v.* Ins. Co. of N. America.]

notwithstanding.' The application of a just subsisting debt against a counter demand may, with the utmost propriety, be deemed a payment and discharge *pro tanto.*

It is not possible that Gourdon by any assignment or other act, could extinguish the equity of the company to defaulk their fair demands. Even in the case of a bankruptcy, a set off obtains. The assignment of the invoices and bills of lading can produce no additional effect. It remains perfectly dubious, whether the letter of Pratt and Kintzing of the 4th May was ever sent to the company. If presumptions are to be relied on, it must be supposed that Hazard attended the meeting of the creditors to announce their demand. The loss was then unknown ; indeed it had not happened'; and it could not be expected, that the secretary of the corporation should anticipate the event, and declare that they had a lien on the policies. At that meeting he represented the company as creditors of the insolvent trader, and if it became material to the interests of the creditors to know the true state of their demand, his presence there would *necessarily put them on an inquiry. If, they have been remiss in prosecuting this object, the [*333 negligence and laches were their own, and not imputable to the defendants. It cannot be justly said, that the conduct of the company lulled the creditors into a false confidence in the policies. The schooner and cargo would naturally be regarded as pledged to Pratt and Kintzing to secure their demand, and that assignment after having performed its office, is aroused from its slumber to rob the defendant of a just demand, by a new assignment on the 7th July 1798. But the assignment of the 15th May 1797 can only affect them, and of this it does not appear they received any notice.

SHIPPEN, C. J. delivered the charge of the court in substance as follows. The insurances, loss and abandonment have been admitted, though the time of offer of the latter to the company has not been agreed on. The notice of the assignments appears to be material in no other view, in this case, than from the inference deduced from thence, that the defendants were accessary to the loss sustained by the creditors of Gourdon. If the suits had been brought by him for his own use, the set off would clearly obtain against him, and operate as a defence *pro tanto,* because the counter demand had actually become due before the actions were instituted ; and if the insurance company have duly and fairly made their claim known, their right of set off continues against the assignees. Mr. Pratt, in his deposition, takes notice of the notes payable to the company, and says, they had not become due at the time of the assignment. But how could he have known of them, unless he had received notice thereof from the defendants ? and would he not be thus apprised and put on his guard ?

The law on the subject may be ascertained without much

difficulty. The difficulty, if any, will depend on the facts disclosed in evidence. To ascertain the law, it will be proper to premise some considerations relating to negotiable paper, and what instruments come under that denomination.

Bills of exchange· and notes payable to order in the city of Philadelphia, are properly negotiable paper, after such notes have been indorsed *bona fide* in the course of trade. The effect is, that the holder may sue in his own name, and may recover the money from the drawer without any embarrassment whatever on account of any counter demands, or want of consideration, as between the drawer or maker and payee. Bonds may be assigned by our law, so as. to enable the assignee to bring an action on them in his own name, but without the other qualities *334] *of negotiable paper, that is, if the obligor had before the assignment any just demand against the obligee, which he could have set off against him if there had been no assignment, he may set off the same against the assignee, who takes the bond subject to all the equity that it was subject to before the assignment. This rule is however subject to one qualification. If the assignee, when he is about to take the assignment calls upon the obligor to know whether the whole money is due, if the obligor tells him it is a good bond, and is entirely silent as to any claim of his against the bond, he can never after open his mouth against the demand of the assignee.

A policy of insurance is not assignable in its nature, but is assignable in equity. 2 Atky. 557. It is not like a bill of lading, which is assignable in its nature, and the assignment of which will vest the absolute property in the goods assigned to the assignee. A policy of insurance in its qualities resembles a bond for payment of money at a future day, more than any other instrument. They are both choses in action. It is only by a particular act of assembly that the assignee may bring the action in his own name, if the assignment be sealed and delivered in the presence of two subscribing witnesses ; but the law does not prevent the obligor from shewing a want of consideration, or setting off any counter demand against the obligee.

I have before mentioned, that it is incumbent on the assignee of a bond to call upon the obligor to know the *quantum* of the debt due. I take it to be likewise incumbent on the assignee of a policy, to call upon the underwriter and inform him before any account of a loss, and to know if he has any thing to set off against the policy, in case a loss should happen. If the underwriter had this notice, and either makes no objection or claim, or is totally silent as to any claim, I should consider the assignee of the policy in the same condition as the assignee of a bond under the same circumstances, and that both are entitled to recover, notwithstanding the underwriter on the policy, or the obligor in the bond, should afterwards discover that they had a counter demand, and that their mouths are stopped by their ac-

[Yard *v.* Lea's Executors.]

quiescence or silence, otherwise in both cases it would lead to a deception.

The chief question then in this case, is a question of fact, whether there was any notice given to the insurance company of the assignment, and whether they either by their acts, words or silence waived giving any intimation of their demands against the assured. We will only add that the underwriters are acquitted, unless the plaintiff or his creditors suffered by their default, in not letting their claim be shewn.

*The jury found for the plaintiff, but that the defendants were entitled to the defalcation.    [*335

Messrs. Rawle and Dallas, *pro quer.*

Messrs. E. Tilghman, Ingersoll and Moylan, *pro def.*

Cited in 17 S. & R. 289 in support of the decision that in debt on a bond, at the suit of an assignee, it is a good defence, under the plea of payment, that the obligor, before he knew of the assignment, and before the bond became due, had become bound as surety for the obligee, in sums exceeding the amount of the bond, and had been obliged to pay them.

Cited in 4 Wh. 73 to show that a policy of insurance is assignable *in equity.*