*288 The opinion of the.court was delivered by,
Huston, J.
Appeal from the Circuit Court of Lebanon county, debt on bond, plea payment with leave, &c. ■
■ The plaintiff gave in evidence a bon,d executed by Philip Brown on the.29th of March, 1819, for eight hundred dollars, payable on the 1st of May, 1824, assigned to Philip Stine, in presence of one witness, on the 22nd of May, 1819. The defendant read his notice of special matter intended to be given in evidence under his plea; a copy of which had been duly furnished to the plaintiff. It was, that after the execution of the bond in question, Frants, who had sold lan.d to Brown, purchased mills, &c., from Adam Breckbill, and, after paying a part in hand, was to give bonds with security for the instalments; viz. four hundred dollars yearly, till 1835: that Brown being indebted to him, Frants applied to Brown to be security with him in the bonds, who refused; but, on being promised that he should have a credit on his own bonds to Frants for any money he might be compelled to pay as surety for Frants, he agreed; and on the 6th of April, 1819, signed fifteen bonds as bail of Frants to Adam Breckbill.
That he had been compelled to pay, and- had paid four of these bonds, -amounting tú much more than the bond in suit; that these payments were made after being sued on the several bonds as they fell due, and before the bond in question became due, and before he had notice of the assignment of it; and that Jacob Frants has been long insolvent.' . .
The court rejected the first part of the offer; viz. proof of the parol agreement by Frants with Brown, that he should have credit on his own bonds for any money he might be compelled to pay as surety for Frants, but received evidence of payment made by him before notice of the assignment to Stine, and in consequence of liability incurred before that assignment.
The defendant then proved payment by Brown; viz., th'e three first of the four hundred dollar bonds and part of the fourth, which was also taken up by him, and a promissory note for the balance, before the present bond fell due, or any proof of notice of the assignment; and whether these payments were a defence in the pi’esent suit, was really the only question at the trial, and here.
But, other matters were offered and received at the trial, and evidence given to rebut, &c., &c. After the defendant had proved the payment of the bonds in which he was surety, the plaintiff offered to prove that Stine had furnished ifunds to Brown, to enable him to take up those bonds, and.they proved that Brown received from Wilsmyer, about one hundred and seventy dollars of rents of .lands which hád belonged to Frants, and that Frants confessed a judgment to Brown, on which, in 1821, he levied on Frants’s personal property,' and the sheriff paid him, Brown, six hundred and forty dollars. They also proved that Frants, in consideration *289 of one dollar, and of the great losses Brown had sustained, and to indemnify him for responsibilities for Frants, had conveyed to Brotan, in 1S33, an undivided interest in a lot of- ground, &c., which he, Brown, sold in 1825, for two hundred and forty dollars. ■
The defendant, then, to repel-this, offered to prove, and did prove, that Brown was security of Frants to another person; viz. Henry Breckbill, and as such was sued; that the judgment just shown, was confessed by Frants to secure Brown against this, and that the six hundred and forty dollars raised on this judgment, never went into Brown’s pocket, but was instantly paid to Henry Breckbill; and, to shovv the responsibilities incurred for Frants, they offered and were.permitted to show, that Brown had signed eleven bonds falling due annually up to 1835, ’ as bail to Adam Breckbill, for Jacob Frants. That Frants, in'1821, assigned all his property, which had been sold, and all applied to other debts of Frants, except seventy dollars which by Frants’s direction, had been paid to Brotan.' .
.Much was said in the discussion here, about the admission of this last testimony; but, it was strictly repelling testimony, and applied directly to what had been just given by the plain.tijff. If the, counsel will, as they too often do, go out of the real case -trying', and give testimony which appears applicable to the case, but which, when explained, eventuates..unfavourably -to their client, they must not complain. No doubt, the proof that Brown was liable for Frants.to Henry, as well as Adam Breckbill, and that he is still liable, and will be for many a year, were.calculated to raise, in the language of the coünsel, an impression favourable to the defendant; but this proof was rendered legal and even necessary by what the plaintiff had just introduced. The jury were told, that from the evidence it appeared, that before the assignment of the bond in suit, the defendant had become bound for Jacob Frants, who then held this bond, in large sums of money, a part of which bad. become due, and the defendant had, by suit, been compelled to pay an amount exceeding the present,demand of the plaintiff before he knew of the assignment, and before the. money on the present bond became due; that this was a defence against the payment of this bond in the hands óf the assignee, and the correctness of this opinion was the principal matter contested in this appeal. , - ■ ,
. It may appear strange and is strange, that the construction proper to be given to an act passed more than a century ago, and one applying to the daily transactions of men, and of constant occurrence in courts of justice, should be. at this day a subject of serious dispute. We have, in our earliest book of reports, 1 Dall. 23, the report of a trial, the arguments of .counsel at full length, and nothing added to them, in any argument I have ever heard, and a full opinion by a judge, of whom from the opinions of his which have *290 reached us, we may. safely say he was a great lawyer,- This case did not decide every possible question which could arise under this act, but it decided,, that the assignee takes the bond at his peril, that he stands in the same place as the obligee, so as to let in every defalcation which the obligor had against the obligee at the time of the assignment or notice of the assignment. The English statutes .of set-off have been often brought in to affect the construction of this act, and our defalcation act, which takes in many cases not embraced in the statutes of sét-off, is, in these cases, .studiously kept out of view. The statutes of set-off apply to accounts or debts existing mutually at the time of suit, brought; a' bond may be assigned many years before it is due, of course many years before a suit can be brought on it. The obligor, by some other bond or note, or by some-contract or bargain, may have claims on the obligee which will become due before- the time when the,bond is payable. This matter came before the Supreme Court in 1802. Gordon’s Assignees v. The Insurance Co. of N. A., 3 Yeates, 327. The insurance company executed two policies of insurance on the 18th of April, 1797, to Gordon, on a vessel and cargo. On the 18th of April., 1797, Gordon assigned both policies to Pratt and Kintzing, to secure a just debt. On the 15th of May, he assigned all his surplus property to J. James, for the benefit of his creditors, and, on the 7th of July, 179S, Pratt and Kintzing having received their debt in some other way, assigned these policies to J. James, the general assignee of Gordon. The company claimed á defalcation for seven notes of Gordon given before the assignment, payable at different days after the assignment, amounting to fifteen thousand one hundred and twenty-five dollars, also the sum of eleven hundred and seventy-five dollars, on two charges of .premiums made on the 22nd of April and 11th of July, 1797, with a credit of three months: these were after the assignment, but before notice, and some other matters. The opinion of the court' was delivered by Chief Justice Shippen. The assigned policies are put on the same footing as assigned bonds: — “If the suits had been brought by Gordon for his own usej the set-off would clearly obtain against him, and operate as a defence pro tanto, because the counter demand ha.d actually become due before the actions were instituted, and if the insurance company have fairly and duly made their claim-known, their right of set-off continues against the assignees;” And, after stating that the holder of bills of exchange and notes payable in Philadelphia, without defalcation, may recover the amount free from any embarrassment on account of counter demands, of drawer or maker, or want of consideration between original parties, he proceeds: “ Bonds may be assigned by our law, so as to enable the assignee to bring an action in his own name, but without the other qualities of negotiable papers; that is, if the obligor had, before the assignment, any just demand against the obligee, which he would have set off against him, if there *291 had been no assignment, he may set off the same against the assignee who takes the bond subject to all the equity that it was subject to before the assignment,M except where a person, before taking an assignment, calls on the obligor, who tells him it is good and will be paid, and there leaves the facts as to notice of assignment to the . company, and whether they had in any way waived their right, or ever concealed it to the injury of the other creditors. The defalcation was allowed. This was a nisi prius case, but is cited and relied on to its full extent in 1 Binn. 439, in an opinion of the whole court delivered by the late Chief Justice in Bury, Assignee of Binkley, v. Hartman, 4 Serg. & Rawle, 175. All this is recognised, and I think carried farther by a decision, that payment by the obligor to the obligee after assignment, though before notice of it, is good. In Lighty v. Brenner, 14 Serg. & Rawle, 127, it seems this.very point was decided. The court below had rejected evidence to prove, that before the assignment the obligor had paid some money for the obligee'; and that since the assignment he had paid other sums for which he had been bound previous to the assignment, and for which judgment had been obtained against him; on a bill of exceptions to this opinion, the judgment was reversed, and this court decided,-that the evidence ought to have gone to 'the jury. It is true that in that case it was proved the assignee had been told before' he took the note, that there was a defence to it. But, it is also true that it was a note payable without defalcation, and all these cases were elaborately and fully considered. All the other decisions are in accordance with these except two; Reed v. Ingraham, 3 Dall. 505: this was not a bond, and seems to have been decided on the principle that it stood by custom and the understanding of brokers, on the same footing with mercantile paper. 9 Serg. & Rawle, 157. This was not an action on the bond, the liability of the obligor to pay was not in question. It was a feigned issue, directed to ascertain the facts disputed, on a motion to vacate judgment, entered on a bond with warrant to confess judgment. The bond was expressly given by the obligors to raise money on it, and a general warrant of attorney to confess judgment on it was annexed to it; at the same time, the obligee gave the obligors a written agreement that he would not enter a judgment on it in Chester county: — he assigned - it, and the assignee entered judgment on it in ■ Chester county. The obligors moved to vacate this judgment. There was no question as to set-off or defalcation, legal or equitable, or as to the amount of the bond; the question solely related to the validity of the judgment, and this court decided, that the judgment should stand. The transaction was a palpable fraud on whoever should become the assignee. I will not say, that even want of consideration fully proved, would-avail an obligor who executed a bond and gave it to the obligee expressly to go and cheat somebody with it; but, in the decision of this case, some dicta occur contrary to *292 the cases above, cited. If general dicta in cases turning on special circumstances, are to be'Considered as establishing the law, nothing is yet-settled or ever can be long settled. An eminent judge, (Benson,) has left us, in one of the New York-cases, an animated appeal against charging him as liable for the correctness of dicta, on points not trying; and I join him, most cordially. What I have said or written out of the case trying, or shall say or write in such circumstances, may be taken as my opinion at the time, without argument orfull consideration; but, I will never consider myself bound by it when the point is fairly1’ trying and fully argued and considered. And, I protest against any person considering such obiter dicta as my .deliberate opinion. In Mann v. Dungan, Assignee of Morris, 11 Serg. & Rawle, 751, the present Chief Justice, whose expressions in the case in 9 Serg. Rawle, are relied on, had the very point before him; and he decided, that Mrs. Morris, who held the bond of Mann, and who, on the 1st of April, 1822, would, by articles of agreement, become indebted to Mann, Could riot, on the 29th of March, 1822, only three days before she would become the débtor instead of creditor, assign Mann’s bond so as to enable the assignee to recover it clear of defalcation, and this deliberate opinion of the whole court is in precise accordance with the whole train of authorities for fifty years. Bonds never can become the substitute for, or be used as mercantile paper is; the necessity of proving the execution of them, and of the assignment of them,, forbids it; the law forbids it, and there is no necessity for it; money and notes have been found sufficient in.the most mercantile countries; and, among people in the country, it would be of bad consequence if every one who by falsehood, imposition, or fraud, had got an honest man’s bond, could, by assigning, compel payment where nothing was due in law or in justice.
The opinion of the Circuit Court is affirmed.