4 U.S. 47 (____)
4 Dall. 47
Ludlow, Plaintiff in Error,
versus
Bingham.[*]
Supreme Court of United States.

*49 The case was argued by Ingersoll and Dallas, for the plaintiff, and by Lewis and E. Tilghman, for the defendant.
*61 After consideration the unanimous opinion of the COURT was delivered, by the Chief Justice, who, having stated the case, proceeded as follows:
M`KEAN, Chief Justice.
The first inquiry, which it is necessary to pursue, is, where was the note in controversy made, in Pennsylvania, or in New-York? For, whether the act of assembly, relating to promissory notes, is to be introduced, or excluded, in forming our judgment, depends upon the answer, that shall be given to this preliminary question.
It appears, then, that, although the note was signed in Philadelphia, it was not delivered in Pennsylvania; but that the delivery was made by the order, or direction, of Henry Knox, the payee, to William Duer in the city of New-York, in pursuance of a contract, and for a valuable consideration. It is certain, that the bare signing of a note will not give it efficacy. It may be signed with a view to deliver it to the payee, on his complying with some previous stipulation; so that in case of a refusal, it would become useless, and might be cancelled by the drawer. A note is not, therefore, obligatory and valid, until it has been actually delivered to the party, for whose use it is drawn; and as it receives its life, existence, and negotiable character, at the place where it is so delivered, the law of that place must regulate all its subsequent operations. Hence, we consider the present note, as having taken effect in New-York, as being liable to the lex loci of that state (whether depending on positive statutes, or the adoption of the general commercial law) and as exempt from the provisions of our act of assembly, by which an indorsee is liable to all the equity, that the drawer could enforce against the payee.
The note having been thus paid, or delivered, in New-York, was deemed by the law of that state to be as negotiable as a foreign bill of exchange; and it is the nature of a bill of exchange, when indorsed in blank, to pass from hand to hand, by mere delivery, like bank notes payable to bearer. It is true, that the negotiability of the bill may be restrained by the qualified terms of an indorsement; but there must be express words to produce such an effect. In the present case, there was no restraint upon *62 the negotiability of the note; and in a due and fair course of circulation, it was delivered to Duer, he sold it to a bonâ fide purchaser, that purchaser sold it to others, till, at last, it became the property of the plaintiff. While, however, it was in the hands of Duer, an attachment issued at the suit of his creditors, and the drawer of the note was summoned as garnishee.
And here the second great question arises, whether, under these circumstances, the money due at that time, but not payable till long after, on a negotiable note, could be attached as the property of Duer, so as to defeat a subsequent purchaser, bonâ fide, and for a valuable consideration? In England, I believe, there would be no hesitation in deciding, that it could not. On the paper credit of that nation, much of its power and prosperity, (if not its very existence) will be found to depend; and, therefore, every thing that can impede, or injure, the circulation of bills of exchange, promissory notes, and bank notes, is anxiously guarded against. The situation of this country, however, is not the same; so that the legislature of Pennsylvania has not found it necessary to hold in equal respect the negotiability of promissory notes. When the act of assembly was passed, promissory notes were little used; they were given for small debts; and they seldom passed out of the hands of the payee before payment. The object of the act was, simply, to enable the indorsee to sue the drawer in his own name; but in giving this benefit, it was expressly provided, that he should recover no more, than was due at the time of the indorsement. This, therefore, lets in the equitable claims of the drawer against the payee, when he is sued by the indorsee; and even in England, there is no doubt, the consideration of a note may be inquired into, in an action between the payee and the drawer.
The present case, however, arises from a commercial transaction in the city of New-York, where the note was regarded in the light of a foreign bill of exchange. There is no judgment, or authoritative dictum, to be found in any book, that money due upon such a negotiable instrument, can be attached before it is payable; and in point of reason, policy, and usage, as well as upon principles of convenience and equity, we think it would be dangerous and wrong to introduce and establish a precedent of the kind. To adjudge that a note, which passes from hand to hand as cash; on which the holder may institute a suit in his own name; which has all the properties of a bank note payable to bearer; which would be embraced by a bequest of money; and which is actually in circulation in another state; should be affected in this way, by a foreign attactment, would be, in effect, to overthrow an essential part of the commercial system, and to annihilate the negotiable quality of all such instruments.
It has been said, that the purchaser of the note (toties quoties) was bound to inquire into its validity, by applying to the drawer before he bought it. But I cannot perceive the propriety, nor, indeed, *63 the utility, of imposing such a duty in this, or any similar, case. The distance between the place of the drawer's residence, and the place of the note's circulation; and the frequency of the transfers of negotiable notes, payable at long dates; would render such a course highly inconvenient, if not impracticable; while the information to be derived from it, could only assure the purchaser, that an attachment had not issued at the very moment of his application; but could not protect him from an attachment which might issue in less than an hour afterwards, and sooner than his purchase could be accomplished.
Upon the whole, we are, unanimously, of opinion, that the attachment cannot be sustained; and that the bearer of the note on the day of payment, is entitled to recover the money from the drawer. The judgment for the defendant must, therefore, be reversed; and judgment entered for the plaintiff.
SMITH, Justice.
The opinion of the Court is certainly unanimous on the points that have been stated; but I wish it to be remarked, that my concurrence rests entirely on the particular circumstances of this case. The delivery in New-York, which gave effect to the note, and introduced the law of that state as our guide, is, exclusively, the ground of my assent.
ADDISON, Justice.
To me, it would have made no difference, had the delivery and circulation of the note been entirely in Pennsylvania. It is expressed in commercial form, and was negotiable upon commercial principles. On general grounds, therefore, as well as for the particular reasons that have been assigned, I think the judgment of the Court is right: and I should be surprised to find any doubt upon the subject in a great commercial city like Philadelphia.
SHIPPEN, Justice.
It is evident, that on the abstract question, the Court do not agree; nor is it necessary that they should, as we are unanimous in the judgment pronounced, upon the grounds peculiar to this case. If, however, I were called upon to give an opinion, I should incline to the one expressed by Judge Addison.
The judgment below reversed; and judgment to be entered for Daniel Ludlow, the plaintiff in error.[(2)]
NOTES
[(2)] The question involved in this cause had been argued in the Supreme Court; but before any opinion was given by the Judges, and in order to avoid delay, a judgment was entered, by consent, for the defendant, on which the present writ of error was brought, with an agreement, that the decision of the High Court of Errors and Appeals, should, also, be binding in the cases of M`Evers v. Bingham, Service v. Bingham, and M`Crea v. Bingham, all depending in the Supreme Court on the same facts. The present report comprises the arguments in both Courts.
[] A question arose, whether this Court should enter the judgment for the plaintiff in error, or merely remit the record to the Supreme Court, that the judgment might be entered there? In the present case, a decision was immaterial, as Mr. Bingham, being a mere stake-holder, was ready, at once, to pay the money, on the opinion which had been delivered; but as a precedent it was thought important, and the Court kept the point under advisement till the next adjourned session.