Tiighman C. J.
Theactof assembly enables the assignee to maintain an action in his own name for the recovery of the money mentioned in the specialty, or so much thereof as shall appear to be due at the time of the assignment, in like manner as the obligee might have done. It was not the in- ' tent of this act to make specialties negotiable in the same manner as bills and notes are made negotiable by the stat. 3 & 4 Ann. ch. 9. For it will be found, by a comparison of the statute and the act, that the makers of this. act, had the statute before them, and designedly departed from it, in some important expressions. The construction of this act. was well considered, and I think, fixed, by the Supreme Court, so long ago, as the year 1776, in the case of Wheeler assignee of Baynton v. Hughes, 1 Dall. 23. Chief J ustice Chew •gives his opinion, that the main intent of the act was, to enable the assignee to sue in his own name, and to prevent the obligee from releasing, after the assignment; and that the assignee takes the bond, at his own peril, subject to every defalcation which might have been made against the obligee by the obligor, at the time of the assignment, or notice of it. The same opinion is expressed by the late Chief Justice Shippen-, in Inglis v. Inglis's executors, 2 Dall. 49. In the state of Maryland, there is an act of assembly enabling the assignee'of a bond to maintain an action in his own name, and there the law has been held in the same manner, viz. that payment by the obligor to the obligee, before notice of the assignment, is good. These decisions have been founded on equity and convenience. The assignment operates as a new contract, between the obligor and the assignee, commencing upon notice of the assignment. Any other construction would be extremely inconvenient; for the obligor would never be safe in paying the interest or part of the principal, unless the bond was produced, and a receipt indorsed. This *178 would be throwing a great hardship on one who may live at a distance from the obligee, and has to send his money by a third person. Besides, there is a default in the assignee who neglects to give notice, and therefore he does not stand on equal equity with the obligor. In Wardell v. Eden, (2 Johns. Cas. 260,) the assignee of a judgment was recognised by the Court, as the complete owner in equity, and they declared, that all acts of the plaintiff, subsequent to the assignment, and affecting the validity of. the judgment, were fraudulent; yet at the same time they held, that until the defendant received notice of the assignment, all payments made by him to the plaintiff were good. I am, therefore, of opinion, that upon the reason and intent of our act of assembly, and upon principles of general convenience and equity, as well as upon authority, payment.by the obligor to the obligee, before notice of the assignment, is good. The judgment of the Court of Common Pleas should, therefore, be affirmed.
Gibson J.
By the act of 28th May, 1715, it is provided, that the assignee “ shall commence and prosecute his, her, or their actions at law for the recovery of the money mentioned in such bonds or notes, or so much thereof as shall appear to be due at the time, of such assignment.” The plaintiff, therefore, having the legal title, shall recover, unless the defendant has greater equity as to payments made to the obligee after the assignment, but before notice of it. That will 'depend upon whether the negligence of the obligor in not assuring himself, that- his bond had not been assigned when he made the payment, be not at least as great as that of the assignee in not giving notice. Andrews v. Beecker,(a) Wardell v. Eden,(b) and Newman v. Crocker,(c) were equitable assignments of choses in action; so also were all the British cases on the same subject. Notice of an equitable assignment is always required ; and the reason for it is a plain one. Not being an assignment made in pursuance of the terms of the contract, and not being recognised by the common law, but merely tolerated by courts of equity to effect purposes of convenience, an obligor is not to presume an assignment to have been made, and therefore negligence, is not to be imputed to him for making a payment without requiring *179 the production of the instrument. An assignment .of a chose in action is considered in equity as a declaration of trust. Lord Carteret v. Paschal, 3 P. Wms. 197. Co. Litt. 232. b. n. 1. and a party without notice of a trust, and in possession of no circumstance to put him on an inquiry that may lead to a knowledge of it, shall not be affected by it. But the case of a legal assignment made in pursuance of the very terms of the original contract, is widely different. What man of any pretensions to prudence would pay an obligee, either in full or in part, without ascertaining whether he were, at the time, entitled to receive the money; particularly when, by the terms of the agreement, the obligee had stipulated for a right to substitute another, as creditor in his stead ? It is said, the obligee is not bound to produce the bond, and that therefore a demand of it would be without effect. I cannot see any force in this argument. The obligee is not bound to receive a part of what is due ; and if a part be tendered it is received, if at all, as a matter of courtesy to the obligor. He is not entitled to his bond until he tender a sum which the obligee is bound to receive, and if he tender a part he cannot complain if the latter receive it on his own terms. Receiving benefit from a pro tanto abatement of interest afterwards accruing, the obligor should not complain if he bore any loss that arose in consequence of what was a personal accommodation to himself. But can it be doubted, but that a conditional tender of the -whole sum due would be good, and if properly pleaded, would save interest and costs? On payment in full, the obligor is entitled to have his bond; and a partial payment is a matter of compromise between the original parties, not a matter of right in the obligor, and ought not to affect third persons. With regard to promissory notes and bills of exchange, which are subjects of legal assignment, the rule is, that every payment to a person not actually the holder, is at the risk of him making it. It is true, that bonds though assignable under our act of assembly are not strictly negotiable, and therefore do not approach so near the nature of a circulating medium as bills and notes ; but I can see no reason on that account for not applying the same rule to them. In point of justice the principle is the same, as regards each. It is said remittances from a distance could not be so conveniently made, if the construction contended for by the plaintiff in error, should prevail. *180 But may not an agent be employed to ascertain all necessary circumstances ? If the remittance be made directly to the obligee, this of itself is negligence j and the obligor ought not to be permitted to consult his convenience at any body’s risk but his own. Although the rule would require a greater degree of caution than is usual in transacting, business,- no real hardship would ensue ; for where the interest of a third person, not privy to the transaction, is to be affected, the slightest negligence ought not to be tolerated. If the obligee was of doubtful character it would be flat imprudence to- trust him ; and if his character were above suspicion at the time, the person that reposed confidence in him ought to suffer by his deceit, rather than one who did not. By requiring this prudent degree of circumspection on the part of the obligor, fraud will be put completely out of the power of the obligee. On the other hand, if notice be the criterion, no human alacrity may be able to prevent it. The assignee may ride post haste to find the obligor, and failing to intercept him on his way to make a payment, may lose his money. This, it may be said, is an extreme case ; but it might occur; and such cases best serve to test the soundness of a principle.
The case of a mortgage, appears, at first view, irreconcileable with this doctrine. A mortgage is assignable at law, there being a legal estate or term which is the subject of a conveyance, and yet payments to the mortgagee, without notice, must in chancery be allowed by the assignee. Williams v. Sorrell, 4 Ves. 389. But the reason is, that it is apparent on the face of the title, that the conveyance of the legal estate is not absolute, but as a security for a debt; and that equity considers the real transaction as an assignment of a debt from A to B, that debt being collaterally secured by a charge on real estate. Matthews v. Wallwyn, 4 Ves. 128. So that after all, the assignment is not in equity held to be of the legal estate in the land, but of a chose in action, and the assignment is therefore only equitable. But the case of Baldwin v. Billingsley, 2 Vern. 539, was, in principle, precisely the present case. It was the case of a bond. Two trustees of money for the separate use of a feme covert, lend it to a third person, who gives bond to the trustees, and the trust is declared in the condition. The bond is kept by the feme, and one of the obligees having received 100/. for, and on account of the obligor, gives the latter a receipt, as for so much received to the use *181 tof th & femes this obligee becomes insolvent,-and it was held by the lord keeper that this was not a good payment;. that the obligee being a trustee had a power to receive and to pay ; to put out and call in, but the trust being particularly taken notice of in the condition, the obligor ought to have , , . . , , , ... , been cautious how he paid the money, the leaving the bond in possession of the feme being equivalent to an assignment' to her ; that the obligee might -have received if he. had had the bond,but having delivered.it over to the feme, he had dismissed himself of the trust, and therefore the payment made by the. obligor “ -without seeing the bond,” was not good. There was no pretence of actual notice; the decision did. not proceed on that ground. This case, therefore, goes the whole length of the doctrine I contend for. it establishes the point that where the obligor, from the terms of. the contract, knows that the obligee may 'have divested himself of the right of receiving, a payment made without calling for information as to that fact by requiring the production of. the instrument is bad against an assignee.
On recurring to precedents of declarations they are found uniformly, to contain an averment, that the defendant had notice of the assignment. I will not say this averment is unnecessary, although in the case oflhe indorsement of a promissory note it has been held so. But I think it cléar, that it has nothing to do with payments made to the obligee, after the assignment. The obligor ought to have an opportunity to pay his bond without incurring the costs of a suit; and for the purpose of ascertaining the person to whom payment is to be made, notice of the assignment may be very material to him. It is clear, that the notice is for the benefit of the obligor and not of the assignee ; otherwise where a payment to the obligee is not insisted on, it need not be averred, yet I■ doubt that if such averment be necessary in any case, a declaration without it would be bad on demurrer. I therefore do not consider the form of the precedents as evidence that the law has been considered as being different from what I contend for. A long uninterrupted practice, if not pregnant with injustice, although it might be deemed erroneous in principle, would be decisive. But I knbw of.no such practice. The point is of the first impression, and has never-received a judicial decision in this state. In Wheeler assignee of Baynton v. Hughes' executors,(a) Chief Justice CHEWcau *182 tiously avoids expressing an opinion on it. “ The assignee,” says he, “ stands in the same place as the obligee, so as to let in every defalcation which the obligor had against the obligee at the time of the assignment or notice of the assignment,” without saying which. The point didijtot arise, and of course was not decided. In Cumming’s assignee v. Lynn,(a) it was held, that the covenant implied by the word assigned, extends only to this; that the assignee should receive the money from the obligor to his own use, and that if the obligee should receive it, then he should be answerable over. Hence an authority in the obligee to receive it, it is thought, might be inferred. Rut clearly, that does not follow. An express covenant by the obligee to pay over the money in case he received it from the obligor, would not confer on the former a right to give an acquittance ; and an implied covenant could have no greater operation. He has no authority to receive any thing, of which he could not enforce payment by action. It is not pretended, that without actually receiving the contents of the bond he could release it after assignment, whether the obligor had notice or not; and it is incomprehensible, to me, how he can discharge it by an act of a lower nature. I therefore take the effect of the decision to be, that the assignee may, at his election, consider a payment made to the obligee after assignment, as valid, and proceed against him on his covenant; but it by no means follows, that he may not, if he please, treat it as a nullity, and proceed against the obligor on his bond; and I will not say, that he may not proceed against both at the same time ; although, as to that I give -no opinion. In Virginia, where bonds are assignable as in this state, it was thought that an express provision of the act of assembly was necessary to render payments made before notice, valid ; yet in every other respect the law of that state corresponds with our act.
At the opening of the argument, my impressions were strongly opposed to my present opinion. The result of an attentive consideration of the arguments of counsel is a settled conviction, that the evidence was improperly admitted. I therefore think, the judgment ought to be reversed.
Duncan J.
The only error assigned on this record is in the.charge of. the Court, in instructing the jury, that a bona *183 jide payment by the obligor to the obligee, is a discharge against the assignee of the bond, though such payment has been made after the assignment, but before notice; for this is in substance the opinion excepted to.
This case has been held under advisement as one of very general concern, and which, as is contended, never has directly received a j udicial decision in Pennsylvania. I have considered it with all that anxiety its importance requires; but can discover no solid reason to change the opinion I had formed on the argument; and on a very full examination of the subject, I find a concurrence of practice, principle, and authority, to support the opinion delivered by the Court of Common Pleas. The operation of an assignment of a chose in action not negotiable, but which may be assigned, .and the assignee bring suit in his own name, will be considered. The operation of an assignment in equity, of instruments not assignable at law, so as to enable the assignee to bring suit in the name of the assignor, for his use, will likewise be considered ; and the operation of the assignment of a bond under the act of 1715, so far as it has received judicial decision, and as opinions have been delivered on the question now under consideration, growing out of the principles established by judicial decision, though not in direct adjudication. A mortgage is assignable at law; the assignee has all the remedies in his own name, that the mortgagee had on the mortgage, both in law and equity ; he may bring ejectment at law, or he may foreclose in equity. A mortgage is assignable ; but where it is assigned without the assent of mortgagor, the assignee must take it only on the same terms, subject to the same equity as in the hands of assignor. Pow. on Mart. 140. lb. 427. 2 Vern. 428. 692. 784. After assignment of a mortgage, payments to the mortgagee before notice must be allowed against the assignee. 1 Bac. ('Wils. ed.) 249. Sugd. 466. So if a bond be assigned, the bond must be delivered, and notice must be given to the debtor. Ryal v. Rolles, 1 Atk. 177. Otherwise debtors may safely pay the original creditor. A policy of insurance, resembles a bond for the payment of money at a future day. 1 Ves. 330. Though not assignable at common law ; yet on mercantile principles it is, and the assignee may bring suit in his own name ; yet underwriters may set off a debt due by the assignor, at the time of effecting the policy; and the assignee takes it subject to *184 all equity, and defalcation' to which it is subject before assignment. Gourdon for use of assignees v. Insurance Company of North America. 1 Binn. 430, (note.)
There are a variety of decisions in the several states and in England on the effect of such assignment, judiciously selected, and perspicuously arranged by Judge .Wilson, in his valuable edition of Bacon, 1 vol. 249, Assignment. (What things aré assignable,) by which it appears that'courts of law now take notice of and recognise the right of him who has the beneficial interest, and extend to him all the protection of assignments, except only that the assignor cannot sue in his own name. Courts of equity will protect an assignment of a chose in action as much as the law will that of a chose in possession. 2 Corny. Con. 266. So will courts of law now; it is a nicety not now regarded; the form is only different from the' assignment of a thing in possession ; it being by way of trust. The substance of the rule, that the chases in action are not assignable, is. gone, and the shadow only remains. The assignee is recognised as the real party, except as to bringing the suit in his own name. The rule that choses in action are not assignable, is now considered in. a court of •law as a maxim, without use, and without convenience. Tuttle v. Bebee, 8 Johns. 118.
In Pennsylvania, the person having the beneficial interest is considered as the substantial plaintiff, though his name does not appear on the record, and the defendant may plead that the action was for his use, and set off a debt due from him. 1 Binn. 496. Canby v. Ridgway. A bond then is assignable for a valuable consideration, and the assignee alone becomes entitled to the money, and if the obligor after notice of assignment pays the money to the obligee, he will be compelled to pay it over. Constant v. Farmer and another, 2 Mass. Rep. 97. I refer to the numerous authorities in Wils. Bac. above referred to, and to Tuttle v. Bebee, 8 Johns. 118. and Underwood and others v. Van Allen, 12 Johns. 343. When then does'the. duty imposed ort the debtor to the assignee arise ? On notice of the assignment. The rule in equity is, that an assignment of a chose in action, not negotiable, imposes no duty .on the debtor until- notice of such assignment is given. Jones v. Miller, 13 Mass. Rep. 37. Parker Ch. J. in delivering the opinion of the Court, observes, that the question was, whether the facts proved shew such an assign *185 ment in equity as will be supported by courts of law in all respects, except permitting an assignee to bring suit in his own name. The affirmative is pronounced. He then proceeds to state, that the contract between assignee and payee is operative only between them when some act takes place , . - , . . which brings the maker or the note into contract. 1 his act is notice to him, and after such notice it becomes entirely immaterial to him who shall be his creditor, as payments or lawful off-sets, existing before such notice, will be allowed him, and all subsequent payments may as well, for his interest, be finade to the assignee as the original creditor. So early as 1776, the effect of an assignment was settled. Wheeler’s assignee v. Hughes’ executors, 1 Dall. 23. Ch. J. Chew, in his very able opinion, has considered the question in all its bearings; the operation of the assignment is clearly defined. We are clearly of opinion, says the Chief Justice, that an assignee takes the bond at his own peril, and that he stands in the same place as the obligor, so as 4o let in every defalcation which the obligor had against the obligee at the time of the assignment, or notice of the assignment. The only intention of the act being to enable the assignee to sue in his own name, and prevent the obligor from releasing after assignment; he clearly and unanswerably proves, the intention, and marked difference between the act and the stat. 3 & 4 Ann. c. 9.; in some instances adopting the very words of the statute, and in others using different language and adopting a different provision. The statute contains these important provisions to make notes negotiable as bills, “ to enable the assignee to receive what shall be due in like manner as indorsee of a bill of exchange.” The act omits this provision, but substitutes one literally different, entitling the assignee to recover the money that shall appear to be due. Though the question of payment, after assignment, did not directly arise; yet the decision was on the principle, that payments, after the assignment and before notice, were valid. The Chief Justice proceeds to observe, “an argument of force with us, not mentioned by defendant, arising from the wording of the act; the words, ‘so much as shall appear to be due,’ relate to the time of the trial and not to the time of the assignment; they are in the future tense.” The objection which is now made was then made by the plaintiff’s counsel; that it was the obligor’s fault not to have the pay *186 ment indorsed on the bond. This received the most satisfac-* tory answer; that this was not in the power of the party; if the obligee was a bad man, he might refuse to make it. Conforming to these principles, in Cummings’ assignee v. Lynn, 1 Dali. 444, it was decided, that the covenant implied, by the word assigned, extends only to this, that the assignor shall recover the money to his own use, and if the obligee should receive it, he would be answerable over. The rule in the assignment of bonds, was adopted as to promissory notes in M'Cullough v. Houston, 1 Dall. 441.
Chief Justice M‘Kean states, that the situation of this country is not the same as that of England, as to promissory notes ; the legislature of Pennsylvania has not found it necessary to hold in equal respect the negotiability of promissory notes. When the act of 1715 was passed, promissory notes were little used; they were given for small debts, and seldom passed out of the hands of the payee before payment; the object of the act was simply to enable the indorsee to sue the drawer in his own name;
Chief Justice Shippen observes, that bonds may be assigned by our law, so as to enable the assignee to bring suit in his own name, but without the other qualities of negotiable paper. Gourdon for the use of his assignees v. North America Insurance Company. Bills of exchange and notes payable to order in the city of Philadelphia, are properly negotiable paper, after such notes have been bonafde indorsed in a course of trade. Baring v. Shippen, 2 Binn. 165.
Chief Justice Tilghman observes, that a bond, though assignable under our act of assembly comes not within the mercantile idea of a negotiable instrument; because it is liable in hands of assignees to every plea, discount, and objection which might have been offered by the obligor against the obligee. Negotiable papers are bills of exchange, &c. which pass by indorsement, not subject to any right of discount between the parties. Before the act of 27th February, 1797, there was no negotiable instrument in Pennsylvania, but bills of exchange; that act gives this character to notes of a certain description, and to nothing else. If there is no defence by either payer or indorsor except what appears on the note itself, then it is negotiable; but if it is liable in the hands of every one to discount and objection of the payer, then it is assignable, merely, and this is be *187 yond all doubt the situation of a bond. Where the instrument is negotiable in its nature, the indorsement transmits an absolute right, which cannot be objected to by the payer; but where it is assignable, he takes it subject to every discount and objection, unless the payer has been resorted , , . . . .... to and admitted the debt; such precisely is a mortgage. The holder of negotiable paper is not considered in the light of an assignee of payee; and therefore he holds discharged of all latent equities between the parties; this is the natural effect of unqualified negotiability. The only intent of the act of assembly was to enable the assignee to sue in his own name, and prevent the obligee from releasing after assignment ; by Chief Justice Chew, Wheeler assignee v. Hughes, 1 Dall. 23.
The object of the act, says Chief Justice M‘Kean, was simply to enable the indorsee to sue the drawer in his own name. Ludlow v. Bingham, 4 Dall. 47.
Bonds, says Chief Justice Shippen, may be assigned by our law, so as to enable the assignee to bring suit in his own name, without the other qualities of negotiable instruments. Gourdon v. North America Insurance Company, 1 Binn. 432. Now if the only intent of the act of 1715, the sole object of the legislature was simply to enable the assignee to sue in his own name without giving any other character, or bestowing any other protection on the assignee, it follows without doubt, that the absolute legal right to the money is not transferred, but barely the right to sue in the name of the assignee; not changing the situation of the obligor, who only becomes a party to the contract when he receives notice.
Sir Thomas Parker, in Ryall v. Rolles, 4 Ves. 367, lays down the rule thus: as to instruments not negotiable, (for bills of exchange and promissory notes are:) Bonds assigned, they must be delivered, and such delivery of the bond on notice of assignment will be equivalent to the delivery of the goods, for the debtor cannot afterwards justify payment to the assignor. The debtor may safely pay the money to the person who had, without his knowledge, ceased to be his creditor ; the debtor would act bona fide in making the payment, and it would be unjust to make him pay it again. Since the decision of Wheeler assignee v. Hughes’ executors, 1 Dall. 23, Judges have, in Pennsylvania, so considered and declared it.
*188 Pres. Shippen,íii In glis for the use of Reed v. Inglis's executors, observes, much has been said on the point of notice, and it is true, that if the obligee of a bond assign it, notice ought to be given to the obligor to prevent him paying the money over. In 1 Smith, 92, the law is laid down correctly. If the obligee of a bond assigns it, notice ought to be given to the obligor to prevent his paying the money to the obligee who has parted with his interest.
I do not consider these declarations of a succession of Judges, who, to soundness of judgment, joined accurate knowledge and long experience, as mere obiter dicta, but as declarations of the law itself, as arising from principles necessarily flowing from the nature of the circumscribed negotiability of these instruments. It is too late now to take this act up, and with the present opinions of the sanctity which should attend instruments assigned, or the extention of paper credit, to extend to them a protection not in the contemplation of the law ; nor to extend the field of negotiable instruments farther than the legislature have done. The rule established is a safe one ; affording to mercantile paper all the protection which its negotiability demands; and settling the right of other instruments not negotiable, but assignable, on principles of equity and good conscience. The obligor knows the obligee, but how can hé know of the assignment ? The assignee knows the obligor, or he would not take the assignment ; it is in his power to give the notice ; it is his duty so to do; until this is done, there is no contract between him and the obligor. This is an answer to that which was pressed with so much force by the counsel for the plaintiff in error, that the assignment was a legal one ; that the obligor was guilty of neglect in not having the payment indorsed, or his bond given up, if paid in full. If the equity of the parties were equal, the law must prevail; but from the view which I have taken of this case, the law is with the defendant. Both are innocent persons, having suffered, or being likely to suffer, an injury; consequently equally favoured in equity. In such case, therefore, equity will stand indifferent, and will lend aid to neither of them, but will leave the law to take its course. The assignee runs the risk between the time of the assignment and notice that the debt may be paid to his assignor ; he depends on his covenant, that the assign- or will repay any money he may receive from the obligor; *189 ■he has his security and indemnity, and to this he must resort. What is the difference between a chose in action assignable only in equity, and a chose in action assignable under the act of 1715 ? This and this only, that assignee may, under the act, sue in his own name.
If this were not the law, there could be no partial payment, for the obligee might refuse to indorse; there could be no remittance from a distance; none on a bond alleged to be lost; no mutual credit, which the debtor might give on the confix deuce of his bond remaining in the hands of the obligee. These principles are so consistent with the limited negotiability of the instrument; so consistent with the whole system of bonds assignable; have been so often recognised by our highest judicial tribunals, that were I even of opinion, that the adoption of a new rule might be attended with some convenience ; might afford a greater facility to the passing and assignment of these instruments, I would not possess sufficient fortitude or rashness to set up my private judgment against the opinions of the very learned Judges who have preceded me, and overthrow what I consider has now become the settled law of the land. But I consider the ancient long established rule as the safest one, and that the imaginary benefits some may suppose would arise from the introduction of a new rule, would be greatly overbalanced by the real inconvenience, injustice, and evil which would flow from the destruction of the old one.
I am most clearly of opinion, that the opinion delivered in the Court of Common Pleas, is correct, and that the judgment be affirmed. In the Supreme Court of Errors in Connecticut, Woodbridge v. Perkins, 4 Day. 377, in the case of an assignment of a bond or note of hand, there must be a delivery of the bond, or note to the assignee; and notice of the assignment must be given to the obligor or promissor; for until that is done, the obligor or promissor remains a debtor to the obligee or promissee.
Judgment affirmed.

 I Johns. Cas. It.

 2 Johns. Cas. 25&.

 1 Bay. Rep. 246.

 tEallM.

 1 DaU. 444.