## PINKSTON v. BREWSTER, SOLOMON & CO.

1. A trustee who applies the trust fund in his hands to the payment of one creditor, leaving the remainder of the creditors wholly unpaid, the deed under which he acts, contemplating a payment *pro rata* among all the creditors, acts at his peril, and is individually responsible to them.
2. The statute of limitations of six years, is not a bar as between the trustee and *cestui que* trusts.
3. The trustee is not discharged from liability to the *cestuis que trust* by a discharge in bankruptcy, whether he has retained the trust fund in his hands, or has wrongfully paid it over to another.

Error to the Chancery Court at Montgomery. Before the Hon. A. Crenshaw, Chancellor.

THE bill was filed by the defendants in error, creditors of Charles and William McCall, on behalf of themselves and other creditors of C. & W. McCall, against Pinkston & Whitesides, as trustees in a deed of trust, executed by C. & W. McCall. By the terms of this deed, the trustees were required to sell the property conveyed by the deed, and after reimbursing their costs and expenses, to pay *pro rata*, first, certain preferred creditors, among which are the complainants; and it is alledged that the trustees have sold the property and converted it to their own use, and refuse to pay the complainants and the other creditors.

Whitesides admits that he entered upon the execution of the trust, admits the payment in full of a debt to Waldron, Thomas & Co, with the trust property, and that this debt was of equal grade with that of the complainant. That it was his intention to have paid all the debts according to their preferences, but that his co-trustee seized, and took forcible possession of the trust property, since which time he has had nothing to do with it. He also pleads his discharge in bankruptcy in bar of the suit.

Pinkston, by his answer, denies all participation in the act

of Whitesides—admits the taking possession from White-sides of the trust effects, and the sale of the same. He admits having made a payment of a debt of the second class, upon which he was a surety, and claims compensation for his trouble, expenses of the trust, &c., and relies on the statute of limitations.

The chancellor, upon the bill, answer and proof, decreed that Whitesides was chargeable with the value of the goods, paid by him in discharge of a creditor of the first class, deducting therefrom the *pro rata* share of such creditor, witn interest, &c., and that he account for all the goods and effects which he disposed of, previous to Pinkston taking possession. That according to the provisions of the deed, Pinkston was not accountable for the acts of Whitesides, but must accouut for all the effects which came to his hands—and that he was responsible to the complainants for the payment made on a pebt of the second class. He overruled the pleas of the statute of limitations, and bankruptcy, and directed an account, &c. From this decree the defendants prosecute this writ.

J. E. BELSER, for plaintiff in error.

1. Statutes of limitation are now regarded more favorably than formerly, and the courts will not adopt a forced construction to evade their effect. Lowther v. Chappell, 8 Ala. 355; McCluny v. Stillman, 3 Peters, 270.

2. The following cases bear a strong analogy to the one before the court, and show that complainants' demand against Whitesides in the court below, is barred, and that his plea on this point should be sustained. Wood v. Wood et al. 3 Ala. 762; Johnson v. Johnson, 5 Ib. 99; Green v. Johnson, 3 G. &"John. 395; Wilcox v. Plummer, 4 Peters, 172; Kerns v. Schoonmaker, 4 Ohio, 331; Starke et al. v. Starke et al. Car. Law Jour. 503; Terill v. Murray, 4 Yerg. 104; Harrison v. Harrison, 1 Call, 372; Strange v. Durham, 1 Brevard, 83; Duncan v. Migert, 11 Leigh, 542; York v. Bright, 4 Hump. 312; Barnes v. Williams, 3 Iredell, 481.

3. The conversion by Whitesides, of the trust funds, took

place before he was discharged in bankruptcy, and before the passage of the bankrupt act, and where this is the case, the plea of bankruptcy is maintainable. Matter of Tilbatts, 5 Law Rep. 259; 6 Com. L. Rep. 338.

4. Trustees invested with a fund, for a specified object, may exercise a sound discretion as to the means best calculated to effect that object, and where they act *bona fide*, in the premises, they will be protected. 1 B. Monroe, 217; Rice's Eq. 343; 5 Dana, 132; Ib. 171; 9 Ala. 734; 1 Dev. & Bat. Eq. 199; 2 Hare, 246.

5. The complainants in the court below, if they intended to take their case out of the statute of limitations, should have alledged in their bill, that they had not discovered the conversion by Whitesides more than six years before the same was filed.

C. CROMMELIN, for the defendant in error.

1. The statute of limitations does not apply as between *cestui que trust* and trustee in a direct trust, and Whitesides cannot interpose it as a bar. Hill on Trustees, 168, 263, 264, 268, 509, 528; Sanders on Uses and Trusts, 194, 199, Provost v. Gratz et al. 6 Wheat. 481; Kane v. Bloodgood; 7 Johns. Ch. R. 90; Decouche v. Savatier, 3 Ib. 216; Johnson v. Johnson, 5 Ala. R. 90; Michoud et al. v. Girod et al. 4 How. U. S. Rep. 560, 561; Redwood v. Reddick, 4 Munf. 222; Goodrich v. Pendleton, 3 Johns. Ch. R. 387; Coster v. Murray, Ib. 522; Spotswood v. Dandridge et al. 4 Hen. & Munf. 139.

2. The answer of Whitesides discloses that he voluntarily undertook the office of trustee. He could not discharge himself from its obligations by renunciation in the manner in which he seeks to do so. Hill on Trustees, 265; Lewen on Trusts, 132.

3. Plain and unequivocal proof is requisite of his divesting himself of the character of trustee. Nothing is to be presumed. Fishwick v. Sewell, 4 Harris & John 430; Gwinn v. Jones, 2 Gill & John. 173. He should have given express notice to the *cestui que trusts* of his holding adversely, before the statute could begin to run, of which positive proof is required. Rust v. Barr, 1 Watts, 330. In the case of a

numerous body, as creditors, acquiescence has not the same effect in barring equitable rights. Hill on Trustees, 264, 266, 527.

4. The cases in which the statute of limitations is permitted to be interposed, are those of trust by implication or construction of law, in which the possession of the trustee is in its nature adverse from the beginning. Hill on Trustees, 91 to 170, 265.

5. His answer shows, that he accepted his appointment of trustee, acted under the deed of trust, and received into his possession the trust property. In its disposition he is bound by the directions of the deed of trust, and for any wilful departure from it he is responsible. 2 Story Eq. 309, § 1045; Ib. 518, § 1277. He manifested supine indifference and gross negligence in permitting himself to be divested of the possession of the trust property by his co-trustee, and in not seeking again to recover its possession, and is responsible in case of loss occasioned thereby. 2 Story Eq. 517, 525, § 1275, 1276, 1284; Harrison v. Mock et al. 10 Ala. R. 192. The bankrupt law of the United States does not apply to trustees or others acting in a fiduciary capacity. Bankrupt Act U. S. § 1; Owen on Bankruptcy, 13; Hill on Trustees, 528, 532.

CHILTON, J.—1. The deed by which the relation of trustee and *cestuis que trust* is created between the parties, contemplates the payment *pro rata*, among the several creditors, of the amounts which may come to the hands of the trustees, provided the means should be insufficient to pay them the full amount of their demands, and we cannot readily perceive how a trustee can be said to be acting in the "good faith" required by the law, who makes a distinction between creditors by the application of all the trust funds in his hands to the payment of one creditor, leaving the remainder of the creditors wholly unpaid. If trustees take it upon themselves thus to apply the funds, they do it at their peril, and especially should this be so in this case, since the deed in no equivocal terms points out their duty, and designates the payments to be made. But were it otherwise, the courts of chancery are ready to aid and direct the trustee for his pro-

tection in the application of the trust funds. The preferred creditors occupying the same relation with respect to the fund, had each a right to an equal participation in it, and they cannot be divested of that right by the misapplication of the funds by the trustees. " Equality is equity," in such cases. See McLane and wife v. Hosea et al. at the present term. If the trustee had acted without due caution, and has paid a large demand to one of the creditors, leaving the others wholly unpaid, he, and not the *cestui que trusts*, must suffer. See Greene v. Winter, 1 Johns. Ch. R. 40 ; also, McKinley v. Irvine, at the last term.

2. The statute of limitations of six years is urged as a defence ; and it is insisted that the statute should date from the misapplication of the funds by the trustees. We do not agree with the counsel in this position, as applicable to the case before us, and a brief review of the authorities cited by him, will suffice to show the position cannot be maintained.

In Wood v. Wood, 3 Ala. Rep. 756, it is held that in cases where the remedy at law and in equity is concurrent, the statute of limitations applies alike in both forums. That was a bill filed by a legatee against an executor to have an account of the *residuum ;* and because the statute gave the concurrent action of account at law, to which the statute of limitations of six years would perfect a bar, it was held the statute equally applied to the relief in chancery. But the court say, they do not wish to be understood as intimating an opinion that the same length of time could be urged as a reason why a settlement should not be coerced in the orphans' court. This case but affirmed the decision previously made in Maury's administrators v. Mason's administrators, 8 Porter, 222, in which last case it was also stated as a general principle, " that the only trusts not within the operation of the statute, are those which are peculiarly and exclusively the subjects of equity jurisdiction ; and that a subsisting, recognized and acknowledged trust, as between the trustee and *cestui que trust,* is not barred by the statute."

In Johnson v. Johnson, 5 Ala. Rep. 90, which was a bill by a distributee against the administrator for his distributive share, and to set aside a sale made by the complainant to the administrator, who occupied also the relation of guardian, it

was held, after a review of many of the English as well as American authorities, that the *laches* of complainant in not seeking to avoid the settlement until after the lapse of eleven years, was a bar to his relief. In this case, however, the general rule is admitted, that the statute of limitations will not run against a *subsisting continuing* trust.

In Greene v. Johnson et al. 3 Gill & Johns. 389, it is said that as soon as a trust ceases to be a continuing subsisting trust, or expires by its own limitation, or is put an end to by the act of the parties, if it be a fit subject for a suit at law, a cause of action arises, and the statute of limitations begins to run. This case, as well as Kerns v. Schoonmaker, 4 Ohio Rep. 331; Howell v. Young, 2 C. & P. 238; Wilcox v. Ex. of Plumer, 4 Peters's Rep. 172, and Governor, use, &c. v. Stonum, 11 Ala. Rep. 679, were actions at law, and in which, it was very properly ruled the statute of limitations commenced running from the time the cause of action became complete.

It is manifest that none of these cases are decisive of the case at bar, adverse to the defendants in error. In this case, the deed vests in the trustees the title to the property, in trust to pay various debts specified in the schedule annexed to it. It creates a *direct* trust, the enforcement of which by the *cestui que trust*, is peculiarly and exclusively cognizable in a court of equity. A large class of creditors are provided for, and even had Whitesides, the trustee, after having made the misapplication of the trust funds, repudiated the trust, *the record furnishes no evidence that he communicated his determination to the defendants in error.* They had therefore the right to consider him as still acting, and the trust as subsisting.

It has been held, that in cases where creditors are concerned, an improper application of the funds (though within their knowledge) may be charged upon the trustees after a considerable number of years, and that *laches* are not imputable to a body of creditors; so that their assent to an act which is justifiable only upon the ground of their express concurrence, can never be implied from a mere temporary forbearance on their part to question it. See Mathews on Pres. Ev. 452; Hardwicke v. Mynde, 1 Anst. 109; Which-

cote v. Lawrence, 3 Ves. 745; York Buildings Co. v. Mc-
Kenzie, 8 Bro. P. C. 42; Hill on Trustees, 170. We appre-
hend that no case can be found, where, in a direct trust, as
between the trustee and the *cestuis que trust* who compose a
body of creditors, the lapse of six years has been held a bar
to their relief. Indeed, it is laid down as a general rule, that
as between trustees and the *cestui que trust*, an express trust,
created by the act of the parties themselves, will not be barred
by any length of time, the possession of the trustee in such
case being deemed the possession of the *cestui que trust*.
Hovenden v. Annesley, 2 Sch. & Lef. 633; Wedderbern v.
Wedderbern, 4 M. & Cr. 52. This general rule, however,
must be understood as applying to cases where the trust is
still subsisting; for if the trustees have divested themselves
of the legal title, with the full knowledge and consent of the
*cestui que trust*, and have settled and obtained a release, the
court of chancery would be reluctant in entertaining a claim
arising out of the transaction, after such a lapse of time as in
ordinary cases would perfect a bar by the statute of limita-
tions. 4 M. & Cr. 52, *supra;* Portlock v. Gardner, 1 Hare,
594.

These authorities, as well as those referred to in the brief
of the counsel for the defendants in error, are conclusive to
show that the lapse of time which has intervened, under the
circumstances shown in evidence in this case, cannot bar the
relief sought by the bill, and that the decree of the chancel-
lor disallowing the objection was entirely correct. The cre-
ditors who reside in New York, so far from Montgomery,
where the business was transacted by the trustees, are not
presumed to have knowledge of the misapplication of the
funds, and to infer their acquiescence in such misapplication,
would violate the well established principles of equity. Hill
on Trus. 265, where the authorities are collated.

From aught that appears in proof, the beneficiaries under
this deed were waiting in the full confidence that the trus-
tees were engaged in efforts to collect the demands assigned
for their benefit, and to apply the statute in such cases, would
be to hold out inducements to trustees, to conceal from their

*cestuis que trust* the true situation of the assigned estate, until the lapse of six years should deprive them of all right to recover for any breach of duty on the part of the trustees. Such a doctrine cannot be maintained in a court of equity.

3. By the first section of the bankrupt act, it is provided that "all persons residing in any state, district or territory of the United States, owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or *trustee*, or while acting in any other fiduciary capacity, may petition," &c.

In our opinion, the liability of the defendant (Whitesides) is not discharged by the decree in bankruptcy. If the trust funds were in his hands, it would be most evident the case would be embraced in the letter of the act. Is the principle varied, because he has wrongfully paid out the funds to another? We think not. Under the English bankrupt act, it has been held, that if the debt created by the breach of trust be ascertained in its amount, so that it may be proved against the bankrupt's estate, it will be discharged by the certificate. Samuel v. Jones, 2 Hare, 246. But where the extent of the bankrupt's liability *still remains to be determined*, and the amount consequently cannot be proved as a debt under the *fiat*, the certificate will be no answer to a suit by the *cestui que trust*. See *Ex parte* Mare, 8 Vesey, 335; Hill on Trustees, 528.

In the matter of Tibbetts, 5 Law Reporter, 259, Mr. Justice Story held, as he states, after some hesitation, that fiduciary debts not proved under the proceedings in bankruptcy, were not extinguished by the discharge and certificate under the act, and that a misapplication of fiduciary funds deprived the party of all right to a discharge from them, only, if made before the passage of the act, but if made after the passage, such misapplication deprived him of all right to a discharge from any debts. See also 6 Law Rep. 338.

Waiving the consideration of the question whether the defendants in error could have proved their demands in the proceedings in bankruptcy, we think it comes within the spirit and meaning of the exclusion contained in the first and fourth sections of the bankrupt act, as it amounts to a defal-

cation, whether the trustee keeps the money, or wrongfully pays it to another.

We are unable to discover any error in the record, and the decree of the chancellor is consequently affirmed.