## UNION BANK OF TENNESSEE *vs.* BENHAM.

1. When a sheriff is ruled for failing to make the money on an execution, which he had levied on certain negroes as the property of the defendant, he may rebut the *prima facie* liability which his return raises against him, by showing that the negroes were taken from his possession under a writ of *habeas corpus*, and were discharged as free persons ; and the writ of *habeas corpus* and proceedings thereon are admissible evidence for that purpose.

2. The question of freedom, as between master and slave, can only be tried in the manner prescribed by the statute, (Clay's Digest 542 § 19 ;) but when negroes are levied on by the sheriff, as the property of the defendant in execution, they may try the question of their freedom, as between him and them, by petition for *habeas corpus*.

3. When negroes which are not at the time held as slaves, are levied on and discharged, the sheriff, when ruled, may repel the presumption arising from the levy, by showing that they were free.

4. A slave voluntarily manumitted is liable to his master's antecedent creditors ; but a child born in a free State, of a manumitted woman, is free, although its mother, on her return to this State, is subject to the debts of her former owner.

Error to the Circuit Court of Limestone.

Tried before the Hon. John E. Moore.

This was a rule against the defendant in error as sheriff, for failing to make the money on an execution in favor of the plaintiff in error against one Campbell, returnable on the second Monday in March, 1850. On the trial the plaintiff offered in evidence the execution, with the following endorsements : "Levied the within *fi. fa.* on a negro woman named Lucinda, and her two children Henry and George, as the property of Donald Campbell, 17th Oct., 1849."

(Signed)    V. M. Benham, sheriff."

" The negroes, Lucinda, George and Henry, levied on by this *fi. fa.* were this day taken out of my possession by the coroner of Lauderdale County under a writ of *habeas corpus*, and were discharged from the levy by the Hon. the judge of the 4th judicial circuit of the State of Alabama, 24th Oct., 1849.

(Signed)    V. M. Benham, sheriff."

Two other endorsements of a similar character were upon the

execution, to the effect that a levy was made upon the same negroes on the 10th November, 1849, and that they were taken from the possession of the sheriff by the coroner of the county, on the 5th January, 1849, under a writ of *habeas corpus* issued by the judge of the fourth judicial circuit, and were by him discharged on the 10th February, 1850, from the levy.

After the testimony on the part of the plaintiff had closed, the defendant offered in evidence the original writ of *habeas corpus*, which was as follows:

THE STATE OF ALABAMA, ₎ To any coroner of the State of Lauderdale County. ₎ Alabama, greeting:

You are hereby commanded to take possession of the petitioners, Lucinda, George, and Henry Hewett, now detained in custody by Vincent M. Benham, sheriff of said county, and have them before me at 3 o'clock, P. M. on to-morrow, the 24th of October, at the court-house in the town of Florence, when and where the matters and things alleged in the said petition may be inquired of. Witness my hand and seal, 23 October, 1849.

(Signed) S. C. POSEY.

And the returns of the coroner endorsed thereon, as follows: "Rec'd 23 October, 1849. Thos. J. Crow, coroner. Executed this writ of *habeas corpus* by taking possession of said free persons, Lucinda, George and Henry Hewett, this 23 October, 1849." "THOS. J. CROW, coroner," &c.

Also, an order made by the said judge of the fourth judicial circuit on the 24th day of Oct., 1849, discharging said slaves from the levy of the execution, on the ground that the said Lucinda and Henry were proved to have been emancipated in the State of Ohio in Sept., 1847, and the said George was born after such emancipation; to which evidence the plaintiff objected, and the same was overruled. The defendant then offered in evidence another writ of *habeas corpus*, dated on the 2nd January, 1850, issued by the judge of the fourth judicial circuit, directed to the coroner, and commanding him to take into his possession the said Lucinda, George and Henry Hewitt, then detained in custody by Vincent M. Benham, sheriff &c., and to have them before said judge at 10 o'clock, A. M. on the 5th instant, at the court house, &c.; the return of the coroner to said writ, dated 5th January, 1850, that he had taken said negroes into possession: and an order of said judge, discharging said negroes from said

levy, on the ground of the former proceedings by *habeas corpus*, the judgment on which was in full force and effect. To all of which evidence the plaintiff also objected, but the objection was overruled. It was admitted that Lucinda and Henry Hewett, two of the negroes levied on, were in the month of September, 1847, carried by the said Campbell from this State to the State of Ohio, where they remained about three weeks, being there on the 20th September, 1847, and from there went to Indiana, where they remained seven months, and where George, the child of Lucinda, who was also levied on, was born ; and that in November or December, 1848, the said Lucinda and Henry returned to Alabama, bringing with them the said George ; and that Ohio and Indiana were free States. The defendant then offered a deed of *manumission* of the slaves Lucinda and Henry, executed by said Campbell, which is as follows :

Know all men by these presents, that I, D. Campbell of Florence, Alabama, from motives of benevolence and humanity, have manumitted and set free from slavery my negro woman Lucinda Hewett, aged about seventeen years, and her son Henry, aged about twelve months, both of whom are now in this city; and I do hereby give, grant and release unto the above named slaves all my right, title and claim, to their persons and services, and to the property they may hereafter acquire. In witness whereof, I have hereunto set my hand and seal, this 20th September, 1847. D. CAMPBELL, [seal.]

To which the plaintiff objected, but which objection was overruled. It was also proved by the defendant that, at the time the execution was levied on said negroes, and for some months before said levy, they were living as free persons, not held in servitude by any one, and that the said Campbell, the defendant in execution, had removed to California in the spring of 1848.

After the defendant had closed his testimony, the plaintiff offered to introduce the petition of the said Lucinda and her children, for the writ of *habeas corpus*, which set forth, that they were illegally held in custody by the defendant in error, under the writ of execution in favor of the plaintiff in error against said Campbell, which had been levied upon them ; that they were not the property of said Campbell, but free persons. The petition was addressed to the judge of the fourth judicial circuit, and prayed that a writ of *habeas corpus* might issue,

16

directed to the coroner, requiring him to take the petitioners into custody and bring them before said judge; which petition was dated the 23rd of October, 1849. Which evidence was objected to, and the objection sustained.

The plaintiff then offered in evidence another petition of a similar character, on the part of the said Lucinda and her children, dated 2nd January, 1850, which, after stating the same facts as the previous petition, set out said petition, and the proceedings thereon, and their discharge from their levy under such proceedings. This evidence was also objected to by the defendant, and the objection sustained.

Exceptions were taken to the decisions of the court upon the testimony, and the same are assigned for error in this court.

ORMOND & NICOLSON, for plaintiff in error:

The main question in the case is, whether the sheriff can justify his discharging the negroes under such an order ; in other words, whether the whole proceedings were not *coram non judice* and void.

1. The act of emancipation was void, the owner being in debt at the time to plaintiff, for the bill was due 27th May, 1847, and the emancipation was not made until 20th September, 1847.—Clay's Dig. 542, § 18. It surely cannot be tolerated that one can put his creditors thus at defiance, by carrying his negroes to a free State, there liberating them, so as to prevent their being subject to his debts in the very State where his debts are contracted.

2. The court had no jurisdiction of the *habeas corpus* for the purpose of deciding the question of slavery *vel non*.—Field v. Walker, 17 Ala. 80 ; Thornton v. DeMoss, 5 S. & M. 609 ; Sam v. Fore, 12 S. & M. 413 ; Antoine v. DeLacy, 7 Leigh 438 ; Cable v. Cooper, 15 Johns. 152 ; Wise v. Withers, 3 Cranch 331.

3. If the court had no jurisdiction, then the sheriff is still liable, and cannot defeat the rule by setting up the judgment of the court in his defence.—8 Bac. Title Sh'ff. m. ; Sewell on Sh'ff. 101 ; Brown v. Compton, 8 T. R. 435 ; 7 Martin 1, (new series) ; Spalding v. People, 7 Hill 301.

4. The return of the sheriff on the execution shows that the negroes were levied on as the property of Campbell; this has

never been altered or amended, and the sheriff is concluded by it.—Gov. v. Bancroft, 16 Ala. 613.

The sheriff by his levy acquired a property in the negroes, which could not be divested by a writ of *habeas corpus*.

L. P. & R. W. WALKER, *contra :*

1. In a suggestion against a sheriff, under the statute, that with due diligence he could have made the money on a *fi. fa.*, it is entirely competent for the sheriff to show, as well after as before the levy, that the money could not be made. The levy will not estop him from denying that the property seized was the defendant's. In taking it, he merely affirms that he believes it subject to the execution; and, when charged with the want of due diligence, it is simply his duty to show that he was mistaken.—Gov. v. Gibson, 14 Ala. 333; Leavitt v. Smith, 7 Ala. 175.

*Prima facie*, he would be charged on account of his levy; but he could discharge himself, as in any other case of tortious levy, by showing that the defendant had no property in the goods.— 14 Ala. 333; Bristol v. Welsmore, 1 B. & C. 514; Whiting v. Bradley, 2 N. H. 498; 13 Mass. 224.

The levy is not regarded as conclusive evidence of the defendant's title; its effect is simply to raise a strong presumption against the officer, which he must repel by proof.—14 Ala. 343, and cases cited. And although he is not permitted to controvert his official return of the levy, he may prove facts *de hors* the return, in relation to his action under the execution, and which do not conflict, but are consistent with it.—14 Ala. 336; Evans v. Davis, 3 B. Monroe 346; Gov. v. Bancroft, 16 Ala. 605, 612.

Thus, although it was not allowable for Benham to contradict the fact of the levy, it was altogether permissible for him to show any supervening cause by which the levy was defeated or rendered unavailing; e. g., the discharge of the levy under the writ of *habeas corpus*.

2. As to the effect of the writ of *habeas corpus*.

The negroes levied on were taken out of Benham's possession by the coroner, by virtue of this writ issued by the judge of the Circuit Court. On its face it was regular; and the persons, process and subject matter were clearly within the cognizance

of the circuit judge. There was no excess ef jurisdiction (if at all) until the trial of the issue of freedom *vel non*.—Fields v. Walker, 17 Ala. 84.

The process, therefore, being regular on its face, and containing in itself no evidence of the want of jurisdiction, Benham was bound to obey its mandate.—5 Hill N. Y. 440; 18 Ala. 647 ; 3 Wilson R. 341 ; 14 Ala. 326–335 ; 7 Porter 67.

Nor was it any part of his duty to look outside of the writ.— If justified or implicated, it is by what appears on the face of the writ itself. He has no function of judicial discretion, nor the means of inquiry into the causes of action, or their character or legality, contained in the writs delivered to him for service. Obedience to all precepts, is the first, second and third part of his duty, and hence, if they appear regular on their face, and are issued by competent authority, he is protected in all that he does in the due execution of their requirements.—9 Conn. R. 146, Watson v. Watson; 1 Conn. R. 40, Grumon v. Raymond *et al.*

The ground of these principles is simply this, that to the judge belongs the right to issue the writs, and to the sheriff is confided the duty of serving them.

Nor will the court, in cases involving the liability of the sheriff, ever look beyond the process itself, to see whether it is regular or irregular.—24 Wend. 487.

The general rule as admitted in Parker v. Walrod, 16 Wend. 519, is, if the judge has jurisdiction of the subject matter, (i. e. if he has the right to issue the *habeas corpus*, as distinguished from the right to try the issue of *libera vel non;* and that he has, see Fields v. Walker, 17 Ala. 80;) and if the process is regular on its face, he is protected. To require the sheriff to act or not, at his peril, as he may be supposed to know or not the technical regularity of the judge, is in conflict both with the reason and policy of the rule, and would be to act upon the presumption that the officer who executes is wiser than the judge who issues the process.—Webber v. Gay, 24 Wend. 487.

The writ of *habeas corpus* in this case, did not on its face disclose the purpose for which it was issued. It might have been issued (for aught that appears on its face) for a totally different object than to try the question of freedom *vel non*.

It, therefore, follows, should the foregoing views be correct,

that the court did not err in excluding from the jury the petitions referred to in the bill of exceptions.

3. But under the proof in this case, the action of the circuit judge was not beyond his jurisdiction, and the case of Fields & Walker, 17 Ala. 80, does not apply.

The statutory remedy of petition for freedom to the Circuit Court, applies only where the parties are, at the time, in servitude ; i. e. to slaves, or those who are claimed as slaves, and consequently who are *prima facie* slaves.   Where persons are enjoying freedom, and are deprived of it by arrest or otherwise, the remedy is by *habeas corpus ;* otherwise, every free person of color in the State might, at the option of an execution creditor, be levied on, deprived of his liberty, sold as a slave, and be subjected to the slow process of petition to the Circuit Court to recover his freedom.

See particularly the language of the act.   It establishes the distinction.— Clay's Dig. 542 § 19, 462 § 1; 17 Ala. 82.   The statute (Clay's Dig. 468 § 39) only applies where the process is directed against the person of the defendant, as in cases of attachments, bail writs, &c.

The real question here was not the right to freedom, but whether these petitioners were illegally confined in custody, i. e. whether they were subject to execution.   No person was claiming to be their master, no person was detaining them as slaves; which alone would authorize them, under the statute, to petition the court to be allowed to sue *in forma pauperis* to recover their freedom.   The true question being the illegality of their confinement, its solution did not depend upon the inquiry whether they were properly emancipated, but whether, being emancipated, they are not liable to a charge which, if allowed, may or may not reduce them to their original state of slavery.— Ruddles, ex'r v. Ben., 10 Leigh 475.

The writ of *habeas corpus* applies to all cases of illegal detention of the person, except that which grows out of the relation of master and slave.—10 Leigh 476.   And these petitioners, being emancipated and living in freedom, were clearly entitled to the writ.

Suppose the case put in Ruddles v. Ben., that the petitioners had sued Benham for detaining them as slaves, and had recovered in the action, still that decision would not have precluded

the creditors of Campbell for levying their executions; and, if denied the writ of *habeas corpus*, they would be driven, *toties quoties*, to the slow remedy by suit.

4. But independent of the proceedings on the writ of *habeas corpus*, Benham had the right to show any fact which would discharge him from liability by virtue of the levy; provided it was consistent with it.—3. B. Monroe 346. Thus he had the right to show that the negroes were not subject to execution, and in this view the deed of manumission was clearly admissible, connected as it was with proof of its execution in Ohio.— The effect of this proof was not to contradict the levy, but merely to show that in affirming the property to be Campbell's, the sheriff was mistaken.—16 Ala. 605; 1 B. & C. 514.

5. As to the exception which embraced the deed of manumission. The answer to this is, if the sheriff was bound to obey the writ of *habeas corpus*, then this exception cannot avail, because, even if well founded, it was an error without injury.— The *habeas corpus* being a complete defence, the erroneous admission of incompetent evidence on another branch of the case will not be cause of reversal; but independent of this, the deed was competent evidence, in order to show that the youngest child was born after the emancipation of the mother, and consequently was not subject to levy and sale. The petitions for *habeas corpus* were clearly inadmissible. The sheriff was bound to obey the writ if regular on its face, and could not look to anything behind it. The only object and effect of reading the two petitions were, to affect the sheriff with something behind the writ and not appearing on its face. Hence they were incompetent evidence.—14 Ala. 326, 332-35.

6. Carrying these negroes to Ohio with the intention of manumitting them, makes them free *ipso facto*, even without a deed of emancipation.—Law of Slavery 335-9, 348. And their return to Alabama does not make them slaves again.—*Ib.;* 7 Yerger 452; Bland & Woolfork v. Dowling, 9 Gill & Johns. 19. In this view of the case, conceding that there was error in permitting the deed of manumission to be read, still this court will not reverse, as the plaintiff sustained no injury by it.

7. It is clear that the child born after the emancipation and before the levy, is not subject to the execution.—Parks v. Hewlitt, 9 Leigh 511.

GOLDTHWAITE, J.—The first question presented upon the record, is, as to the admissibility of the two writs of *habeas corpus* and the returns thereon. In order to determine this question correctly, it may be necessary to advert to the character and position of the case at the time the evidence referred to was offered. The plaintiff in error was attempting to charge the defendant in error for failing to make the money upon a writ of execution against Donald Campbell, which he had received as sheriff. His own returns had been introduced, showing that he had levied the execution on certain negroes, on the 17th October, 1849, and again on the same negroes on the 5th January, 1850, the execution being returnable on the second Monday in March, 1850. A *prima facie* liability was thus raised against the defendant for the value of the negroes, which he could only relieve himself from by showing a state of facts which would repel the presumption arising from the levies.

It is insisted, however, on the part of the plaintiff in error, that the sheriff should not be allowed to make proof of this character—that it would be contradicting his return, which must be held conclusive against him, until set aside or amended. We do not understand the rule to go this length, (Bancroft v. The Governor, 11 Ala. 605;) but it is unnecessary to inquire into the correctness of this position, as we do not consider that this evidence tended in anywise to dispute or contradict the fact of the levy: it was matter entirely outside of it; and the case of The Governor v. Gibson, 14 Ala. 321, is conclusive upon the point, that testimony of this character may be admitted.

But it is said, that the proceedings under which the negroes were taken from the possession of the sheriff, and subsequently discharged, were void for want of jurisdiction, and for that reason they afforded no protection to the officer in yielding obedience to their mandate; that the proceedings were by *habeas corpus*; that the question involved was the right of the negroes to freedom, and that this question could not be tried in that mode.

It is true, that this court has decided, that when negroes are held in servitude and claimed as slaves, they cannot by *habeas corpus* try the right of the person claiming to be the master or owner to hold them, (Fields v. Walker, 17 Ala. 80,) and we are satisfied with the correctness of that decision; but it does not necessarily follow, that the question of freedom may not be tried

in that mode, where the relation of master and slave is not involved ; and the reasoning of the judge who delivered the opinion of the court in the case referred to, is wholly inapplicable to a case where the right of the master, *as such*, is not litigated. The grounds on which the decision in Fields v. Walker is rested, are, that another remedy had been provided for the trial of that question, as between the person held in servitude and the person who claimed the right to his services as owner, the provisions of which appeared to have been framed with direct reference to the issue of freedom, as between them ; and that, as in such case the question was one involving the right of the owner to his property, he was, under the constitution of this State, entitled to a trial by jury, which he could not have upon a *habeas corpus*, where the trial is by the judge alone. On referring to the statute providing for the suit for freedom, (Clay's Dig. 542 § 19,) it will be seen, that the owner is required to enter into bond and security for the forthcoming of the slave, in which case he remains in his *service* until the termination of the suit, and if out of his possession, the slave himself is required to give bond and security to make good to the owner such costs and damages as he may incur in consequence of the application ; and these provisions, we think, show, that the remedy to which they belong, and which they form a part of, was not intended to apply to any other than the person standing towards the slave in the relation of owner. It may be said, that the sheriff, by the levy, occupies this position for the time being, and that the legislative remedy must be asserted against him ; but it is not to be supposed that, in a case of this kind, the legislature intended the sheriff should give bond, or that by doing so he should become entitled to the services of the negro until the termination of the suit ; that he should be kept in jail during that period, or that the rights of the plaintiff in execution should be jeoparded by the failure on the part of the sheriff to confine the negro, until he could be sold. A sufficient answer is, however, as we think, to be found in the nature of the right which the sheriff acquires by the levy. He gains no right to the *use* or *service* of the slave, but a mere right to keep and sell, and the law regards him as the owner, only so far as may be necessary to maintain this right. He holds him only as subject to the execution.

We apprehend that it would hardly be contended, that a

white man not held in servitude, if levied on by the sheriff, and confined in jail, could not try the legality of his confinement by *habeas corpus.* Would the fact that he was levied on as a slave deprive him of the benefit of this writ, and drive him to the slow process of the statutory suit for freedom ? The issue before the judge upon the *habeas corpus,* would be the legality of the confinement, and this, it is true, would incidentally involve the question of slavery ; but no right of the master or owner would be involved, and the judgment of the court discharging the party from his confinement, would prove nothing whatever, upon the issue of freedom, between him and one claiming to be his owner ; and if such would be the rule in relation to a white man, there would be no difference of principle in its application to a free person of color. In every case in which the latter is confined, he has the right to try the legality of his confinement, except in the single case where he is held as a slave by some one claiming the right to his services as master or owner, in which case, the legislature has, from motives of the soundest policy, prescribed a different remedy.

We have said nothing as to the constitutional ground on which the case of Fields v. Walker was put, as it obviously has no application to a case where the question of ownership is not involved.

It results from the views we have expressed, that the magistrate had jurisdiction to try the legality of the confinement of the negroes levied on; provided it did not touch the relation of owner ; and as it does not appear from the proceedings, that this question was involved, we cannot say that they were without jurisdiction ; and as they were valid upon their face, they afforded a protection to the sheriff.

The next question arises upon the action of the court below in admitting the deed of manumission. The general principle that the sheriff may defend himself against a rule for failing to make the money, by showing that the defendant in execution had no property out of which the money could be made, is a proposition no one can doubt ; and our own decisions go to the extent that this may be done after levy, if it is shown that he has released the property or returned it to the true owner.— Leavitt v. Smith, 7 Ala. 176; Macon v. Watts, *ib.* 703. The principle of these decisions is, that the sheriff, by levying upon

the goods of a third person, becomes a trespasser, and being so, the law does not impose on him the duty of holding them, after he has ascertained their true ownership. We can see no distinction between a levy made on free persons of color, not held as slaves at the time of the levy, and goods proper not belonging to the defendant in execution. In either case, the sheriff would be responsible in damages; and in the first case, we can conceive of no valid reason why he should be bound to retain the negroes after ascertaining the fact of their freedom, which would not require him to retain property belonging to a third person. The statute providing the mode in which a person held as a slave may try the question of slavery, is confined to such person only, and does not affect the right of the sheriff to try that question, when the proceeding is against him, and it is involved in the issue which he makes. It may be that these principles would not apply to a case where the negro levied on was held as a slave by the defendant in execution, or by one deriving title from him during the continuance of the execution lien. This question is not presented upon the record before us, as the evidence set forth in the bill of exceptions shows that the negroes levied on in this case did not occupy that position. They were not held as slaves at the time of the levy; and we would be understood upon this point as limiting our decision to the case made by the record, and as deciding only, that where negroes not held as slaves are levied on and discharged, the sheriff, when ruled for failing to make the money, may repel the presumption arising from the levy, by showing that the negroes were free.

The execution in the case under consideration, was upon a debt which was due before the act of manumission; and under these circumstances, as that act was not based upon a valuable consideration, it was simply a gift of freedom to the slaves, and must be governed by the same rules that apply to other gifts. These considerations, however, do not apply to the child George, who was born in a free State, and after the execution of the deed of emancipation. The condition of the mother at the time of his birth was that of freedom. She was liable, it is true, to be subjected into slavery to satisfy the claims of antecedent creditors, but this could not be done until such creditors had obtained a lien, and until that contingency happened, she must be regarded free to all the world; and the child born while she was

in that condition, would, as a matter of course, follow the *status* or condition of the mother at the time of the birth.—Parks v. Hewlett, 9 Leigh 511. In this aspect, and for the purpose of showing that one of the negroes levied on was free, the deed was properly admitted.

It only remains to consider whether the court below erred in refusing to admit the petitions for the writs of *habeas corpus*. So far as the jurisdiction of the proceedings was concerned, we have already considered that question, in the previous part of the opinion, and as they could have been introduced only for the purpose of showing the want of jurisdiction, whether they were admitted or not, would make no difference in this respect.

There is no error in the record, and the judgment is affirmed.